**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Ta-Roy Hamilton,<br><br>          Plaintiff,<br><br>   -v-<br><br>Timothy Hill Children Ranch, Thud Hill,<br>Karen Mobley, Jane Doe 1, Jane Doe 2,<br><br>          Defendants. | | 2:25-cv-828<br>(NJC) (SIL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is a motion to proceed in forma pauperis ("IFP") filed by pro se plaintiff Ta-Roy Hamilton in an action in which he brings claims relating to the conditions of his detention at the Timothy Hill Children Ranch (the "Ranch") during the period July 1, 2019 through September 25, 2019. (IFP Mot., ECF No. 2; Compl., ECF No. 1.)

On November 19, 2025, this Court issued a Memorandum and Order (ECF No. 6) ruling on Hamilton's IFP motion and assessing the Complaint pursuant to 28 U.S.C. §§ 1915(e), 1915A(a). This Corrected Memorandum and Order supersedes and entirely replaces that Memorandum and Order. For the reasons that follow, the Court grants the IFP motion and dismisses the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

**BACKGROUND**

On February 12, 2025, Hamilton filed a Complaint in this Court pursuant to 42 U.S.C. § 1983 ("Section 1983"), against the Ranch, its program director Thud Hill, "house parent" Karen Mobley, and two unidentified individuals who are alleged to be a "program coordinator/social worker/transporter ("Jane Doe 1") and a "house parent/transporter" ("Jane

Doe 2") (collectively, "Defendants"). (Compl. 1–2.)[1]

## I.     The Complaint

The "Facts" section of the Complaint alleges, in its entirety:

On June 4, 2019 I was committed to the care and custody of the timothy hill Childrens Ranch by honorable Judge Fernando Camacho for a probation violation. Beginning around the last week of June I was picked up from my outpatient program Seafield on main street in Riverhead, NY by my social worker from ranch and was instructed to sit in the front seat of the car after a few minutes Jane doe 1 placed her hand on my inner thigh on my private until I was Aroused and then began to stroke it under my shorts. When we arrived back at the ranch she told me to keep this between us unless I wanted to go back to jail then she laughed. After that happened Jane Doe 1 picked me up multiple times and even signed up to replace my house parent while he went on vacation were she then made me engage in sexual intercourse. It was told to me by another Defendant that she told her that the sex was good which is when Karen Mobley seen me at a baseball game and then had her brother-in-law who was a counselor at the ranch do a surprise search on me by telling me to empty my pockets which is when he uncovered a cell phone that I was not allowed to have he told me not worry he wouldn't report the phone as long as I texted his sister in law she thought I was cute. So I texted her so I wouldn't get into trouble and later that night she left the house she was at overseeing her female residents and pulled in front of the house I stayed in and texted me to come outside after I did we pulled up the street and she began to kiss me and remove her shorts we had sexual intercourse but the entire time I was nervous bc at the time I had on an ankle monitor and she told me as long as I make her cum that I did not have to worry there were multiple times when she would pull in front of my resident and we'd have sexual intercourse. After defendant one got a New job (Jane doe 1) Jane doe 3 began picking me up from Seafield one time she picked me up and she had alcohol and encouraged me to drink with her so I did and after a little while she told me that she wanted to perform oral sex on me so I let her but I couldn't get aroused so she said maybe next time but I was not comfortable doing it so I avoided her at all costs. This went on until late September when I could no longer take all the sexual exploitation so I threw a drink on a male counselor and was kick out of the program however after I got arrested all 3 women kept in contact by visiting me, sending letter, and accepting my calls to make sure I did not tell anyone what occurred while I was at the timothy hill childrens ranch. These workers sexually

---

[1] On January 13, 2025, Hamilton filed separate complaint against his criminal defense attorney challenging the quality of representation during four pending state court prosecutions, which was also accompanied by a motion to proceed IFP. *See* 2:25-cv-247(NJC)(SIL) *Hamilton v. Tuohey* (IFP granted and claims dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)).

exploited me on multiple occasions. My civil rights were violated by a person
acting under the color of the law or state actor. They also violated my 14th
Amendment right of equal protection.

(Compl., ¶ II.)[2]  Hamilton claims that as a result of the alleged conduct, "I became emotionally

distressed which led to me using hard drugs, also begin suffering from Ptsd as well as finding it

hard to trust females in the future leading to very unhealthy relationships which put me in a deep

depression, lowered my self esteem that was followed by me becoming suicidal." (*Id*. ¶ II.A.)

Hamilton seeks to recover $3 million in compensation "for physical and emotional distress" and

"the mental toll that all the sexual exploitation and abuse had on me considering the fact that I

was never the same after everything occurred." (*Id*. ¶ III.)

## LEGAL STANDARDS

### I.    In Forma Pauperis

Upon review of Hamilton's IFP Motion (IFP Mot.), the Court finds that Hamilton is

qualified by his financial status to commence this action without the prepayment of the filing fee.

Therefore, the IFP Motion is granted.

### II.    Sufficiency of the Pleadings

Under the Prison Litigation Reform Act ("PLRA"), courts "shall dismiss" a case brought

by an incarcerated person proceeding IFP "at any time if the court determines that . . . the

action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Additionally, given that Hamilton is proceeding IFP, the Court is required to "review . . . as soon

as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress

---

[2] Excerpts from the Complaint have been reproduced here exactly as they appear in the original.
Errors in spelling, punctuation, and grammar have not been corrected or noted.

from a governmental entity . . . ." 28 U.S.C. § 1915A(a); *see also Zarro v. Spitzer*, 274 F. App'x

31 (2d Cir. 2008) (holding that 28 U.S.C. § 1915A "allows the district court to dismiss a

complaint filed by a prisoner upon finding that it fails to state a claim upon which relief may be

granted.") (internal quotation omitted); *Butler v. Sazerac Co. Fireball Mfr*., No. 23-CV-7496),

2023 WL 8003329 (E.D.N.Y. Nov. 17, 2023) (dismissing a case against private parties under 28

U.S.C. §§ 1915(e)(2)(b)(i)-(ii); 1915A(b)(1)).[3]  At the pleading stage, the court must assume the

truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal*

*Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

678–80 (2009)), *aff'd*, 569 U.S. 108 (2013).

    This Court is required to construe pleadings "filed by *pro se* litigants liberally and

interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th

62, 67 (2d Cir. 2023) (quotation marks and citation omitted). "[A] *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551

U.S. 89, 94 (2007)) (quotation marks omitted).

    Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[3] The term "prisoner" is defined in this statute to include "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79 (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). The factual allegations of a complaint must be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation marks omitted).

If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). If, however, amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Id.*

## DISCUSSION

### I.    Section 1983 Claims

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d

5

Cir. 1993) (citing *City. of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)); *accord Jean-Baptiste v. United States Dep't of Just.*, No. 23-441, 2024 WL 1193062, at *1 (2d Cir. Mar. 20, 2024) (noting that Section 1983 does not provide an independent source of substantive rights). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See Sykes*, 13 F.3d at 519.

Here, Hamilton has not alleged a plausible Section 1983 claim because the Complaint does not plausibly allege that any Defendant acted under color of state law and because his claims are time-barred.

### A.     Lack of State Action

Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *DeFreitas v. Toulon*, No. 2:23-CV-5933, 2024 WL 308250, at *10 (E.D.N.Y. Jan. 26, 2024) (citing *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)). Accordingly, "[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) ("[A] litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.") (quotation marks and citation omitted); *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [] required to show state action.") (quotation marks and citation omitted).

6

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted). Nevertheless, a private actor may satisfy the "under-color-of-state-law" element where: (1) "the entity acts pursuant to the coercive power of the state or is controlled by the state"; (2) "the state provides significant encouragement to the entity," and "the entity is [either] a willful participant in joint activity with the state or the entity's functions are entwined with state policies"; or (3) "the entity has been delegated a public function by the state." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 147 (2d Cir. 2020). For example, in *Vaughn*, the Second Circuit held that a plaintiff who brought claims against the privately-owned drug rehabilitation facility in which he resided did not plausibly allege state action because, "[a]lthough [a] state judge required [the plaintiff] to stay at [the facility]," the plaintiff "had agreed to participate in treatment" at the facility in lieu of being incarcerated, and thus his residence at the facility was "ultimately voluntary." *Id.*

Here, the Complaint does not allege sufficient facts to establish that the Ranch, Hill, Mobley, Jane Doe 1, or Jane Doe 2 were state actors such that they can be held liable under Section 1983 for constitutional violations. Indeed, the Ranch is a private, not-for-profit private corporation[4] and thus neither the Ranch nor its employees or agents are state entities.

Nor does the Complaint plausibly allege facts to establish that Defendants, despite their status as private individuals, were nevertheless acting "under color of state law" because: (1) Defendants were acting "pursuant to the coercive power of the state or is controlled by the state";

___

[4] *See Hogan v. CIGNA Property and Casualty Cos.*, 216 A.D.2d 442, 443 (2d Dept. 1995) (explaining that the Ranch is a not-for-profit corporation).

(2) Defendants were either "a willful participant in [a] joint activity with the state" or an entity whose "functions are entwined with state policies"; or (3) Defendants were "delegated a public function by the state." *Vaughn*, 957 F.3d at 147. Here, the Complaint does not contain sufficient factual allegations to establish the nature of Hamilton's residence at the Ranch. It alleges that Hamilton "was committed to the care and custody of [the Ranch] by honorable Judge Fernando Camacho for a probation violation" but does not allege whether the Ranch was "delegated a public function by the state," or whether, as in *Vaughn*, Hamilton's residence at the Ranch was "ultimately voluntary" and undertaken in lieu of incarceration. (Compl. ¶ II); *Vaughn*, 957 F.3d at 147. Accordingly, Hamilton's Section 1983 claims are dismissed without prejudice pursuant to 28 U.S.C. §§ (e)(2)(B)(ii), 1915A(b)(1).[5]

## II.    Statute of Limitations

"Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law." *Sikorsky v. City of Newburgh, N.Y.*, 136 F.4th 56, 63 (2d Cir. 2025). It is thus well-settled that "[t]he statute of limitations for § 1983 actions arising in New York is three years." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020).

The Complaint alleges that the relevant conduct occurred from "[b]etween July 1st 2019 up until September 25 2019" and does not allege any facts supporting a finding that the statute of

---

[5]  In an abundance of caution, the Court has considered whether the Complaint has sufficiently alleged a basis to invoke this Court's diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and finds that it has not. The Complaint has not alleged Hamilton's pre-incarceration domicile nor any basis for the Court to reasonably conclude that the requirement of complete diversity of citizenship of the parties is met.

8

limitations was tolled for any period. (Compl. ¶ II.)[6]  Accordingly, based on the facts alleged in

the Complaint, the statute of limitations ran on September 25, 2022; however, Hamilton did not

file the Complaint until February 12, 2025—more than five years *after* the challenged conduct

occurred. Therefore, the Court dismisses the Complaint for the additional reason that all of the

claims alleged are time-barred under the applicable three-year statute of limitations.[7]

### III.    State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over

all other claims that are so related to claims in the action within such original jurisdiction that

they form part of the same case or controversy under Article III of the United States

Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim"

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3). "When deciding whether to exercise jurisdiction over pendent state law claims,

---

[6] The Court notes that N.Y. C.P.L.R. § 214-g ("Section 214-g") provides for the revival of certain otherwise untimely state law personal injury claims arising from incidents of sexual abuse where the plaintiffs were minors at the time of the alleged abuse. Given the nature of Hamilton's claims—and to the extent that Hamilton was a minor at the time of his residence at the Ranch—Section 214-g may alter the statute of limitations applicable to any state law claims Hamilton brings. Nevertheless, under binding Second Circuit precedent, Section 214-g does not alter the statute of limitations for Section 1983 claims based on the same facts alleged to support a state law personal injury claim. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 111 (2d Cir. 2023) ("[W]e hold that Section 214-g, as a tort-specific provision, is not a revival or tolling statute closely related to the residual personal injury statute of limitations applicable to a Section 1983. . . . Accordingly, the district courts correctly concluded that the federal claims brought by [plaintiffs], which had accrued more than three years prior to the filing of their respective lawsuits, were time barred under Section 214(5) and properly dismissed those claims.").

[7] Because the Complaint fails to state a claim for the reasons identified above, the Court does not address whether the Complaint plausibly alleges any constitutional violations that, if timely and asserted against state actors, would be actionable under Section 1983.

courts weigh the factors of 'judicial economy, convenience, fairness, and comity.'" *Allen v. City of New York*, No. 24-2589-CV, 2025 WL 3152723, at \*2 (2d Cir. Nov. 12, 2025) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *abrogated on other grounds by Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39-41 (2025)).

Here, because the Complaint contains no plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh against exercising supplemental jurisdiction over any state law claims in the Complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any potential state law claims, including under the New York State Child Victims Act, N.Y. C.P.L.R. § 214–g, to the extent that the Complaint brings any such claims.

## IV.    Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotation marks and citation omitted). Accordingly, the Court grants Hamilton leave to amend to cure the deficiencies identified above—in particular, the Complaint's failure to allege that any of the Defendants was a state actor and to allege any claims arising under federal law that are not barred by the applicable statute of limitations.

## CONCLUSION

For the reasons stated above, this Court grants Hamilton's IFP motion (ECF No. 2), and dismisses the Complaint (ECF No. 1) pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). The Clerk of the Court shall mail a copy of this Order to Hamilton at his address of

record in an envelope marked "Legal Mail" and shall record such mailing on the docket.

If Hamilton seeks to file an amended complaint, he must do so by **January 16, 2026**. Failure to timely file an amended complaint will result in a dismissal of Hamilton's case without prejudice.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated:  Central Islip, New York
        December 1, 2025

                                            */s/ Nusrat J. Choudhury*
                                            NUSRAT J. CHOUDHURY
                                            United States District Judge